In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-03-00924-CV
____________
 
MARY WILLIAMS, D.D.S. and RUSSELL WILLIAMS, D.D.S., Appellants

V.

L.M.S.C., INC., D/B/A THE DENTAL SOLUTION, Appellee




On Appeal from the County Civil Court at Law No. 2
Harris County, Texas
Trial Court Cause No. 750,537
 

 
 
DISSENTING OPINION
          The undisputed evidence shows that placement fees for dentists were neither
part of, nor contemplated by, the original agreement, and that the agency unilaterally
amended that agreement to include those fees by means of addenda to the agreement. 
I therefore respectfully dissent from the majority opinion’s holding that the evidence
is legally sufficient to show that there was a meeting of the parties’ minds that (1)
placement of dentists was a matter encompassed by the written agreements and that
(2) consideration supported modification of the agreement to add fees for placement
of dentists. I would therefore sustain the Williamses’ second issue on appeal. 
          No evidence in the record shows that a meeting of the minds occurred on what
is clearly an essential, material term: that, in addition to placement fees for dental
hygienists and dental assistants, the parties’ agreement encompassed placement fees
for dentists. See T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 221
(Tex. 1992) (holding that mutual assent, i.e., “meeting of the minds” concerning
material, essential terms is prerequisite to formation of binding contract that court
will enforce); Continental Cas. Co. v. Fina Oil & Chem. Co., 126 S.W.3d 163, 169
(Tex. App.—Houston [1st Dist.] 2003, no pet.) (same); Neeley v. Bankers Trust Co.,
757 F.2d 621-628 (5th Cir. 1985) (stating that, under Texas law, essential, or
material, terms are those that parties would reasonably regard as vitally important
elements of their bargain). No one disputes that the issue concerning whether the
Williamses agreed to pay a fee for the placement of dentists was an essential, material
term of the agreement.
          Section 16 of the original agreement, which addressed modification of
“compensation rates and placement fees,” stated as follows:
(16) The Compensation Rates and Placement Fees are subject to change. 
TDS will provide CLIENT with thirty (30) days written notice of a
change in Compensation Rates or Placement Fees. In the event CLIENT
does not terminate this Agreement within thirty (30) days of TDS
sending such notice to CLIENT, this Agreement will automatically be
deemed to be amended to include the new Compensation Rate or
Placement Fees.
  
Although this provision of the agreement recognizes modification of rates and fees,
any modification necessarily pertained only to placement of personnel contemplated
by the agreement, specifically, dental hygienists and dental assistants.


 It is undisputed that dentists were not a category of employees covered by the original
agreement.
          Fees for placement of dentists were addressed first in the fee schedule that
became effective May 1, 1998, and later in the fee schedule that became effective
June 1, 1999.


 Both fee schedules stated that, “This fee schedule serves as addendum
to any existing contract.” By adding a new category of personnel, the addenda clearly
attempted to modify the original agreement by including fees for placement of
dentists, rather than fees for placing only dental hygienists and dental assistants. See
Moser Co. v. Awalt Indus. Props., Inc., 584 S.W.2d 902, 906 (Tex. Civ.
App.—Amarillo 1979, no writ) (stating that modification is change or alteration that
introduces new elements into details or cancels some of them). No evidence in the
record, however, shows that the Williamses ever agreed to modify their original
agreement with the agency to include a new category of employees. 
          The majority opinion holds that some evidence shows that a meeting of the
minds occurred to include payment of fees for placing dentists because the
Williamses paid placement fees for dental hygienists and dental assistants according
to the terms requested by the addenda. The majority opinion also emphasizes that the
Williamses did not terminate the original agreement after they received the addenda. 
I would hold that paying increased fees for placement of dental hygienists and dental
assistants according to the terms of the addenda—and as contemplated by section 16
of the original agreement—is no evidence that the Williamses agreed to pay
placement fees for dentists. It is undisputed that the Williamses complied with the
terms of their agreement with the agency, as amended by the addenda by paying all
required placement fees for dental hygienists and dental assistants. It is also
undisputed that the Williamses never paid the agency any placement fees for dentists. 
Specifically, the Williamses paid for Flanagan’s work as a dental hygienist, from June
1998 to August 1999, according to the terms of the original agreement, as modified
by the addenda pursuant to section 16 of the original agreement. But, the record
conclusively establishes that the agency had never placed a dentist at the Williamses’
offices. Flanagan became licensed to practice as a dentist on or about September 1,
1999 and began working at the Williamses’ offices on or about August 31, 1999, but
as a dentist, and no longer as a dental hygienist. At that point, the Williamses refused
to pay any placement fee for Flanagan’s work as a dentist. Accordingly, evidence
that the Williamses paid placement fees for dental hygienists and dental assistants 
in compliance with the addenda is no evidence that they agreed to comply with the
unilaterally added terms that required fees for the placement of dentists. Therefore,
the record does not support any implied finding by the jury that the Williamses had
a meeting of the minds concerning the payment of fees for the placement of dentists. 
See Mandril v. Kasishke, 620 S.W.2d 238, 244 (Tex. Civ. App.—Amarillo 1981, writ
ref’d n.r.e.) (stating that modification requires meeting of minds of parties, and that
one party may not unilaterally reformulate contract). 
          The majority opinion also relies on the Williamses’ failure to terminate their
original agreement within 30 days of receipt of the addenda as some evidence that
they agreed to the terms of the addenda. Having previously agreed to modifications
of placement of personnel contemplated by the original agreement, dental hygienists
and dental assistants, and having no dentists placed by the agency, the Williamses had
no basis for terminating their original agreement simply because the agency
unilaterally added new terms to that agreement without the Williamses’ consent and
without negotiating a modification that encompassed dentists placed by the agency. 
See id. Evidence that the Williamses did not terminate their original agreement,
which encompassed dental hygienists and dental assistants only, is no evidence that
the Williamses agreed or consented to the terms unilaterally added by the addenda. 
          I would hold that the Williamses’ mere knowledge of these fees, by receipt of
the agency’s addenda, is no evidence that they agreed to pay a placement fee for
dentists. I would hold, therefore, that the addenda are no evidence of any agreement
by the Williamses to pay a placement fee for the placement of dentists. 
          I would further hold that nothing in the record supports modification of the
agreement to include a fee for the placement of a dentist, because there is no evidence
of the requisite consideration. See Roark v. Stallworth Oil & Gas, Inc., 813 S.W.2d
492, 496 (Tex. 1991) (holding that consideration may consist of benefit that accrues
to one party or, alternatively, detriment incurred by other party); Walden v. Affiliated
Computer Servs., Inc., 97 S.W.3d 303, 315 (Tex. App.—Houston [14th Dist.] 2003,
pet. denied) (holding that modification of agreement must be supported by new
consideration). 
          The majority opinion relies on the terms of the modification that included a
quid pro quo by providing that the placement agency would receive the benefit of the
placement fees for dentists, and that the Williamses would receive the benefit of
having dentists placed for employment at their office. The fallacy in this reasoning
is that the agency unilaterally added these terms, and the Williamses did not comply
with them by paying fees for Flanagan’s work as a dentist. Because the Williamses
never agreed to the terms and neither gave nor received consideration for the
modification, no consideration by the Williamses supports the alleged modification. 
See Roark, 813 S.W.2d at 496 (stating that, “The detriment must induce the making
of the promise and the promise must induce the incurring of the detriment.”). 
          For these reasons, not more than a scintilla of evidence supports the jury’s
finding that the Williamses breached the agreement by failing to pay the agency’s
permanent placement fee for the placement of Flanagan as dentist. I would, therefore,
hold that the evidence is legally insufficient to support the breach of contract claim. 

                                                                        Elsa Alcala
                                                                        Justice
Panel consists of Justices Nuchia, Jennings, and Alcala.
Justice Alcala, dissenting.